[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14539

_____

STEPHEN BOOKER,

Petitioner-Appellee,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:08-cv-00143-MCR

_____

Before WILSON, NEWSOM, and LAGOA, Circuit Judges.

WILSON, Circuit Judge:

This is the Florida Secretary of the Department of Corrections' (the State) appeal from a district court order appointing federal counsel for death row inmate Stephen Booker in state postconviction proceedings. The State argues that the district court erred by appointing federal counsel when Booker already had adequate representation in state court. However, the State lacks standing to bring this appeal because the district court's appointment of federal counsel caused no injury to the State. Therefore, we dismiss the appeal.

Booker, the appellee in this case, is on Florida's death row for first-degree murder. The evidence introduced against him at trial included fingerprints, body hair samples, and footprints matching the pattern on his boots. For the last several decades, Booker has filed numerous appeals and petitions in state and federal court. In 2012, we affirmed a district court's denial of federal habeas relief. *See Booker v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1121 (11th Cir. 2012) (per curiam).

Eight years later, in 2020, counsel from the Capital Habeas Unit of the Office of the Federal Public Defender (CHU) filed a motion in federal district court asking for permission to represent Booker in state court to exhaust a *Brady* claim[1] so that Booker

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1963).

could pursue the claim in a successive habeas petition in federal court.  The *Brady* claim focused on the prosecution's failure to disclose notes that allegedly could have been used to impeach the FBI hair expert who testified at trial.  Booker said that he had recently learned through a FOIA request and a review by a qualified microscopist that there were inconsistencies between the expert's trial testimony and his notes.

The State objected to the appointment of federal counsel, pointing out that Booker had a state-law right to counsel through Florida's Capital Collateral Regional Counsel North (CCRC-N). Later that day, the State filed a notice that CCRC-N counsel had been appointed to represent Booker in state court.  Nonetheless, over the State's objection, the district court appointed federal counsel pursuant to 18 U.S.C. § 3599 to represent Booker in state court so that he could exhaust the *Brady* claim.  The State now appeals the district court's order appointing federal counsel.

Before we can proceed to the merits of the State's appeal, we must satisfy ourselves that we have jurisdiction. *Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla.*, 528 F.3d 817, 819 (11th Cir. 2008) (per curiam).  Article III standing is a threshold jurisdictional question "determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498 (1975).  Because Article III limits our jurisdiction to cases and controversies, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499.  And this is true at every stage of litigation, including on

appeal. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.").

There are three elements of Article III standing, each of which the State bears the burden of establishing. First, the State must show that it has "suffered an 'injury in fact.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The injury must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of . . . ." *Id.* "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561.

The State offers two separate bases on which to establish Article III standing. First, citing a binding decision from the old Fifth Circuit, the State argues that it has standing based on potential conflicts that might arise when federal habeas counsel appears in state court as state postconviction counsel. *See In re Gopman*, 531 F.2d 262 (5th Cir. 1976). That case involved a grand jury investigation into union corruption, in which the labor union's attorney, Gopman, simultaneously represented the union and individual union officials. *Id.* at 264. The district court ordered Gopman to cease his dual representation. *Id.* at 265. On appeal, Gopman challenged the government's standing to object to the conflict of interest. *Id.* Unsurprisingly, we held that when an attorney knows about a

"possible ethical violation," he is obligated to raise the issue. *Id.* It was "clear," we held, "that the possibility of a conflict had become great enough for the trial court to exercise its discretion." *Id.* at 266.

Our analysis in *Gopman* seems to have turned on prudential rather than Article III standing. *See Warth,* 422 U.S. at 498–499 (explaining the difference). But in any event, it is not difficult to imagine that Gopman's dual representation of the labor union and its officials would have made a conflict "imminent." *See Lujan*, 504 U.S. at 560. In contrast, the State has not pointed to any "actual or imminent" conflict of interest that exists in the context of Booker exhausting his *Brady* claim. *See id.* True, Booker's current federal counsel, Linda McDermott, previously represented Booker as state counsel. But Booker is not alleging—and there is no indication that he will allege—that his counsel was ineffective at any point in the state proceedings. The State's suggestion at oral argument that a conflict could later arise—perhaps on the basis that state postconviction counsel was ineffective for failing to raise the *Brady* claim earlier—is, at best, conjectural or hypothetical. *See id.*

The State also cites two Supreme Court cases for the proposition that federal habeas counsel's appearance in state court can lead to conflicts of interest. *See Christeson v. Roper*, 574 U.S. 373 (2015) (per curiam); *Martinez v. Ryan*, 566 U.S. 1, 13 (2012). While we do not doubt that conflicts sometimes arise in such cases, neither *Christeson* nor *Martinez* comes close to saying that Article III standing can hinge on an injury that is neither actual nor imminent.

Moreover, neither of the specific conflicts that arose in *Christeson* and *Martinez* are applicable to the CHU's representation of Booker. Because no actual or imminent conflict of interest is at play here, the State's first argument fails to establish a concrete and particularized injury.

Next, we consider the State's second purported basis for standing: that the Florida Attorney General is representing the Secretary in this proceeding, and that it has a stake in protecting Florida's postconviction system from interference by CHU counsel or federal district courts. The State relies heavily on our holding in *Gary v. Warden, Georgia Diagnostic Prison* for the proposition that "federally-funded counsel in independent state court proceedings . . . would raise troubling federalism concerns." 686 F.3d 1261, 1278 (11th Cir. 2012). Of course, the federalism concern we discussed in *Gary* related to federal counsel pursuing purely state law claims in state court. *Id.* We never suggested that federal counsel exhausting a federal constitutional claim in state court was an affront to state sovereignty, and in fact we drew a sharp distinction between the two scenarios. *Id.* at 1277–78.

But there is a more fundamental reason why the State cannot establish standing on this basis. Even if CHU counsel's appearance in state court could offend state sovereignty, that injury is not traceable to the district court's order. When Booker's § 3599-appointed counsel appeared in state court, the State failed to object, *see* Oral Argument Recording at 3:05–3:18, and the state court allowed her appearance. We are hard pressed to see how Florida can

20-14539               Opinion of the Court                    7

come to us complaining that the district court's order infringed its sovereignty where it did not so much as object to CHU counsel's appearance in state court and where the state court accepted her appearance. The State's argument, it seems, would have us conflate the *appointment* of counsel under § 3599 with the *appearance* of counsel in state court. Let us explain.

Section 3599 outlines the provision of federally funded counsel for defendants subject to a death sentence who are financially unable to obtain adequate counsel. 18 U.S.C. § 3599. Pursuant to the district court's order, federal funds could be spent on Booker's CHU counsel. Importantly, however, the State's asserted basis for standing is not the appointment of counsel nor the provision of federal funds to counsel. Indeed, the State concedes that it has no interest in how federal funds are spent. Rather, the alleged injury, as the State explains in its brief, is the appearance of CHU counsel in state court.

What we have, then, is a mismatch between the effect of the order the State is challenging and the injury it claims to be asserting. The district court's order simply does not control which lawyers appear in state proceedings; such determinations remain the prerogative of state courts. *See Bowles v. Desantis*, 934 F.3d 1230 (11th Cir. 2019). In *Bowles*, a death row inmate argued that he had "the right to have his federally appointed counsel appear at a state clemency interview where the State has appointed another attorney to do so." *Id.* at 1241–42. We rejected that argument, noting that "[i]t would be a radical departure from the norm for lower

federal courts, or Congress, to tell state courts what to do in state proceedings, including which lawyers they must permit to appear before them in those proceedings." *Id.* at 1242. Section 3599, we explained, gives federal courts "the authority to appoint counsel or approve the funding of other services." *Id.* at 1243. It does not, however, allow "federally appointed counsel . . . [to] force their way into proceedings. . . ." *Id. Bowles* thus forecloses the State's argument that the district court's order offended state sovereignty. All the court did was appoint federal counsel and allow federal funds to flow to that counsel. It could not—and did not—dictate which lawyers could appear in state court. *See id.*

In conclusion, the State cannot establish standing based on a hypothetical conflict of interest that is not actual or imminent. And because state courts are empowered to reject appearances by CHU counsel, the district court's order appointing federal counsel cannot have inflicted an injury on Florida's sovereignty. Having failed to establish an injury in fact that is traceable to the district court's order, the State does not have Article III standing. Therefore, we dismiss this appeal for lack of jurisdiction.

**DISMISSED.**

20-14539          Lagoa, J., Specially Concurring          1

Lagoa, Circuit Judge, joined by Newsom, Circuit Judge, Specially
Concurring:

I concur in full with the majority's opinion dismissing the
Florida Secretary of the Department of Corrections' appeal as the
State has failed to establish Article III standing.  I write separately
to explain why, if we did have jurisdiction, I would reverse the dis-
trict court's order and conclude that the district court erred in ap-
pointing counsel from the Capital Habeas Unit of the Office of the
Federal Public Defender ("CHU") under 18 U.S.C. § 3599 to repre-
sent Booker in Florida state postconviction court without first mak-
ing a determination that Booker's counsel provided by the State—
Florida's Capital Collateral Regional Counsel – North ("CCRC-
N")—was not "adequate representation."

Here, Booker filed a motion to permit counsel from CHU to
exhaust a *Brady* claim in state postconviction court pursuant to
§ 3599.  At the time, Booker lacked representation in his state post-
conviction proceedings, as his most recent state postconviction
counsel (who investigated the *Brady* claim) had accepted employ-
ment in CHU and was thus no longer able to represent him in that
capacity.[1]  The State objected to Booker's motion on October 19,
2020, and, that same day, Booker was appointed CCRC-N as his

---

[1] The attorney from CHU who filed Booker's motion, Linda McDermott, was
formerly Booker's state postconviction counsel and was a member of Florida's
statewide registry of private attorneys who are available to represent indigent,
death row defendants in postconviction proceedings. *See* Fla. Stat. §§ 27.710–
.711; *McClain v. Atwater*, 110 So. 3d 892, 897 (Fla. 2013).

2              [Lagoa, J., Specially Concurring]         20-14539

new state postconviction counsel.[2]  Thus, before the district court ruled on Booker's motion, he had state-appointed postconviction counsel, CCRC-N.

On November 2, 2020, the district court issued an order granting Booker's motion and appointing CHU as additional counsel to exhaust the *Brady* claim.  The district court found, based on "the unique circumstances of Booker's case," that it was significant CHU had represented Booker since 2016 and was thus "fully invested [in] the case and uniquely positioned to represent him in connection with the new claim, even in state court."  The district court concluded that the "interests of justice" required that "Booker be allowed to have the continuity of representation and depth of familiarity" that CHU offered.  The district court also

---

[2] "Florida has an explicit statutory scheme in place to provide postconviction counsel to all capital defendants."  *State v. Kilgore*, 976 So. 2d 1066, 1068 (Fla. 2007); *see also* Fla. Stat. § 27.7001–.711.  Pursuant to Florida Rule of Criminal Procedure 3.851(b), following the Florida Supreme Court's issuance of a mandate affirming a defendant's judgment and sentence of death on direct appeal, the Florida Supreme Court issues "an order appointing the appropriate office of the Capital Collateral Regional Counsel or directing the trial court to immediately appoint counsel from the Registry of Attorneys."  CCRC-N is one of the three Capital Collateral Regional Counsel offices currently in place in Florida.  *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1202 n.2 (11th Cir. 2014).  The Florida Supreme Court has set forth qualifications for attorneys to serve as "lead counsel in capital postconviction proceedings," including three years of postconviction litigation experience and prior participation in at least five capital proceedings (e.g., trials, sentencing, postconviction evidentiary hearings, collateral postconviction appeals, and federal habeas proceedings).  *See* Fla. R. Crim. P. 3.112(k); *see also* Fla. R. Crim P. 3.112(f)–(h), (j).

20-14539          Lagoa, J., Specially Concurring          3

noted that the appointment would "not unduly delay proceedings," as CHU's involvement would "only further the timely exhaustion of the state claim." Yet nowhere in this order did the district court inquire into whether CCRC-N—which the State provided to Booker pursuant to Florida's statutory scheme providing postconviction counsel for capital defendants—could provide him "adequate representation" in exhausting the *Brady* claim.

By failing to make a finding as to the adequacy (or lack thereof) of CCRC-N's representation of Booker for purposes of exhausting his *Brady* claim in state court, the district court erred by not applying the plain language of § 3599 in its appointment of CHU. In construing statutory language, we must "begin [ ] where all such inquiries must begin: with the language of the statute itself," giving "effect to the plain terms of the statute." *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021) (alteration in original) (quoting *In re Valone*, 784 F.3d 1398, 1402 (11th Cir. 2015)). Where the statute's language is "plain and unambiguous," there is no need for further inquiry, as "[t]he plain language is presumed to express congressional intent and will control a court's interpretation." *United States v. Fisher*, 289 F.3d 1329, 1337–38 (11th Cir. 2002). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Chinchilla*, 987 F.3d at 1308 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). And "[w]hen examining the plain and ordinary meaning of a statute, 'one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of

4          [Lagoa, J., Specially Concurring]          20-14539

enactment." *Id.* (quoting *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016)).

Turning to the statutory language, § 3599 is titled "Counsel for financially unable defendants." Section 3599(a)(2) provides that, in postconviction proceedings under 28 U.S.C. §§ 2254 and 2255, "any defendant who is or becomes financially unable to obtain *adequate* representation . . . shall be entitled to the appointment of one or more attorneys." (emphasis added). Section 3599(e) further provides that "[u]nless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings." *See also Harbison v. Bell*, 556 U.S. 180, 186–88 (2009). The Supreme Court has interpreted "§ 3599's provision that counsel may represent her client in 'other appropriate motions and procedures'" as allowing a district court to "determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim [in state court] in the course of her federal habeas representation." *See id.* at 190 n.7.

"Under a straightforward reading of [§ 3599], subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at 185. Thus, the key inquiry in determining whether a district court shall appoint federally funded counsel under § 3599(a)(2) to exhaust a claim on behalf of a capital defendant in state court is whether that defendant has been unable to obtain

20-14539        Lagoa, J., Specially Concurring        5

*adequate* representation. Section 3599(a)(2) does not define the term "adequate." Dictionaries define "adequate" as "sufficient for a specific need or requirement," *Adequate, Merriam-Webster's Collegiate Dictionary*, https://unabridged.merriam-webster.com/collegiate/adequate (last visited Dec. 10, 2021), or as either: (1) "[f]ully satisfying what is required; quite sufficient, suitable, or acceptable in quality or quantity"; or (2) "[s]atisfactory, but worthy of no stronger praise or recommendation; barely reaching an acceptable standard; just good enough," *Adequate, Oxford English Dictionary* (3d ed. 2011).

In this case, by the time that the district court ruled on Booker's § 3599 motion, the Florida state postconviction court—upon the State's motion—had appointed CCRC-N as Booker's new state postconviction counsel. Despite the state court's appointment of CCRC-N, however, the district court in its appointment of CHU as additional counsel under § 3599 did not inquire into whether CCRC-N would be able to provide adequate representation to Booker on his *Brady* claim. Instead of making a finding as to the adequacy of CCRC-N's representation, the district court skipped straight to considering whether the appointment furthered the "interests of justice" in Booker's case and concluded that those interests weighed in favor of CHU's appointment.

But the "interests of justice" standard does not concern the determination of whether the capital defendant is financially unable to obtain adequate representation, which is a prerequisite to appointment of counsel under § 3599(a)(2). Rather, that standard

6                    [LAGOA, J., Specially Concurring]              20-14539

applies when a capital defendant moves for substitution of his federally appointed counsel for new representation under § 3599(e). *See Martel v. Clair*, 565 U.S. 648, 652, 662 (2012); *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1259 (11th Cir. 2014) ("Substitution of that federally-appointed counsel is warranted only when it would serve 'the interests of justice.'" (quoting *Martel*, 565 U.S. at 658)). Therefore, the district court's reliance on *Martel* to conclude that the "interests of justice" supported the appointment of CHU in this case cannot be construed as a finding that CCRC-N was unable to provide adequate (i.e., sufficient) representation to Booker in exhausting his *Brady* claim in state court. Furthermore, because there is no other language in the order as to the adequacy of CCRC-N's representation of Booker, there is no indication that the district court made a determination as to whether Booker was "financially unable to obtain adequate representation" under § 3599(a)(2) to be entitled the appointment of federally funded counsel. And because the district court did not make such a determination, its appointment of CHU as additional counsel under § 3599 to exhaust the *Brady* claim in Florida state postconviction court was in error.

★ ★ ★ ★

To summarize, the plain language of § 3599(a)(2) permits district courts to appoint federally funded counsel to a capital defendant only when that defendant "is or becomes financially unable to obtain adequate representation." In reviewing capital defendants' motions to appoint federally funded counsel under § 3599 for the purpose of exhausting claims in state postconviction courts,

20-14539          Lagoa, J., Specially Concurring                    7

district courts must determine whether the defendant already has adequate representation to exhaust the claim in state court. Where a capital defendant does not have counsel provided in his state post-conviction proceedings, this determination is self-explanatory. But where a capital defendant already has counsel appointed in his state postconviction proceedings—for example, in a state such as Florida that has an explicit statutory scheme to provide postconviction counsel to all capital defendants, see State v. Kilgore, 976 So. 2d 1066, 1068 (Fla. 2007)—the district court should explain its findings as to why that counsel cannot provide adequate representation if the district court concludes that appointment of federally funded counsel under § 3599 is warranted. And, in this case, if we had jurisdiction over this appeal, I would conclude that the district court erred by failing to explain how CCRC-N's representation was not adequate for purposes of exhausting Booker's Brady claim in state court when the court appointed CHU as additional counsel pursuant to § 3599.