**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13973

————————————

LYNDON FITZGERALD PACE,

*Plaintiff-Appellant,*

JERRY SCOTT HEIDLER,
WARREN KING,

*Intervenor Plaintiffs-Appellants,*

*versus*

COMMISSIONER, GEORGIA DEPARTMENT OF
CORRECTIONS,
ATTORNEY GENERAL, STATE OF GEORGIA,
WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION
PRISON,

*Defendants-Appellees.*

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cv-01557-SCJ

———————————————

Before ROSENBAUM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Lyndon Pace, Jerry Heidler, and Warren King seek to reinstate their lawsuit against the commissioner of the Georgia Department of Corrections, the Georgia Attorney General, and the warden of the Georgia Diagnostic and Classification Prison (we'll refer to them together as the state). The district court dismissed for lack of standing because their complaint didn't allege an imminent injury. But, after careful consideration and oral argument, we conclude Pace, Heidler, and King did allege an imminent injury, plus every other element of standing. So, we reverse and remand for further proceedings.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pace, Heidler, and King are three Georgia death-row prisoners. Pace "raped and strangled to death four women"—Lula Bell McAfee, Mattie Mae McClendon, Johnnie Mae Martin, and Annie Kate Britt—"three of whom were more than seventy-eight years old." *Pace v. Warden, Ga. Diagnostic & Classification Prison*, No. 16-10868, 2023 WL 3376683, at *1 (11th Cir. May 11, 2023), *cert. denied*, 144 S. Ct. 2529 (2024). Heidler "broke into the home of Danny and Kim Daniels and shot them and two of their children to

death." *Heidler v. Warden, GDCP*, No. 20-13752, 2023 WL 4927253, at *1 (11th Cir. Aug. 2, 2023), *cert. denied*, 144 S. Ct. 2565 (2024).    And King and an accomplice shot and killed Karen Crosby as she left work for the night.    *King v. Warden, Ga. Diagnostic Prison*, 69 F.4th 856, 860 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 2501 (2024).

Their death sentences were affirmed on direct appeal, and the Supreme Court denied certiorari.    *Pace v. State*, 524 S.E.2d 490, 507 (Ga. 1999), *cert. denied*, 531 U.S. 839 (2000); *Heidler v. State*, 537 S.E.2d 44, 57 (Ga. 2000), *cert. denied*, 532 U.S. 1029 (2001); *King v. State*, 539 S.E.2d 783, 802 (Ga. 2000), *cert. denied*, 536 U.S. 957 (2002).    Between May and August 2023, we affirmed the denial of their bids for habeas relief.    *Pace*, 2023 WL 3376683, at *40 (affirming denial of habeas); *Heidler*, 2023 WL 4927253, at *43 (same); *King*, 69 F.4th at 877 (same).    And later that year, we denied their petitions for rehearing en banc.    Order at 2, *Pace v. Warden, Ga. Diagnostic & Classification Prison*, No. 16-10868 (11th Cir. July 11, 2023), Dkt. No. 87-1; Order at 2, *King v. Warden, Ga. Diagnostic Prison*, No. 20-12804 (11th Cir. Aug. 18, 2023), Dkt. No. 63-1; Order at 2, *Heidler v. Warden, GDCP*, No. 20-13752 (11th Cir. Oct. 10, 2023), Dkt. No. 68-1.

### A.  *The Agreement to Suspend Executions*

As Pace, Heidler, and King litigated their federal habeas appeals, the state and the capital-defense bar agreed in April 2021 that the state wouldn't "pursue [] execution warrant[s]" until three conditions were satisfied.    First, the Georgia Supreme Court's

pandemic-era "judicial emergency order" had to expire. Second, the Georgia Department of Corrections had to "lift[] its suspension of legal visitation" and restart "normal visitation." And third, a Covid-19 vaccine had to become "readily available to all members of the public." After the three conditions were met, says the agreement, the state would wait six months before seeking a warrant to execute any covered death-row prisoner (with one exception not relevant here). When the state finally sought an execution warrant, it would "ask each [d]istrict [a]ttorney to seek the maximum warrant period of 20 days" and "wait no less than 30 days before pursuing each subsequent warrant." The agreement was "made with the understanding that [Georgia's] [d]istrict [a]ttorney[s] maintain[] the sole authority to obtain an execution warrant."

By its terms, however, the agreement didn't cover Pace, Heidler, or King. It applied only to death-row prisoners whose rehearing petitions we denied while the Georgia Supreme Court's emergency order remained in effect. The emergency order expired on June 30, 2021. *State v. Fed. Def. Program, Inc.*, 882 S.E.2d 257, 265 n.3 (Ga. 2022). Because we denied Pace, Heidler, and King's petitions for rehearing en banc in 2023, they fell outside the timeframe covered by the agreement.

With the expiration of the emergency order, the agreement's first condition has been satisfied. But Pace, Heidler, and King allege that the vaccination and visitation conditions remain

24-13973                Opinion of the Court                5

unfulfilled.[1]    And before those conditions had been fulfilled, the state "informed the Federal Defender [Program]" "that [it] intended to seek an execution warrant for" a prisoner covered by the agreement.    The Federal Defender Program sued on its own behalf to enforce the agreement, resulting in an injunction barring the state from executing the prisoners covered by the agreement until all three conditions were satisfied.    *See Fed. Def. Program, Inc.*, 882 S.E.2d at 288 (affirming preliminary injunction); Permanent Injunction Order at 27, *Fed. Def. Program, Inc. v. State*, No. 2022CV364429 (Ga. Super. Ct. May 30, 2025) (issuing permanent injunction), *rev'd*, — S.E.2d —, 2026 WL 1541134 (Ga. June 2, 2026).[2]

### B. *Prisoners Not Covered by the Agreement*

The state has also sought to execute prisoners not covered by the agreement.    For example, on February 29, 2024, the state "procured an execution order" for Willie James Pye.    Like Pace, Heidler, and King, Pye fell outside the agreement because we denied his rehearing petition in 2023, after the Georgia Supreme Court's emergency order expired.    *See Pye v. Warden, Ga.*

---

[1]  The Georgia Supreme Court recently held that the Covid-19 vaccine is now "readily available" to all members of the public.    *State v. Fed. Def. Program, Inc.*, No. S26A0364, — S.E.2d —, 2026 WL 1541134, at *8 (Ga. June 2, 2026). At the motion to dismiss stage, we nevertheless draw the facts from the allegations in Pace, Heidler, and King's complaint because "[s]tanding is determined at the time the plaintiff's complaint is filed."    *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014).

[2]  Although the Georgia Supreme Court adjudicated the vaccination condition, the visitation condition remains to be litigated.

*Diagnostic Prison*, No. 18-12147, 2023 WL 386289, at *1 (11th Cir. Jan. 25, 2023); Order at 1, *Pye v. Warden, Ga. Diagnostic Prison*, No. 18-12147 (11th Cir. Mar. 9, 2023), Dkt. No. 87-1.   Nineteen days after the state obtained the warrant, Pye had his clemency hearing.   Ga. State Bd. of Pardons & Paroles, *The Georgia Parole Board Has Denied Clemency for Willie James Pye* (Mar. 19, 2024). The parole board denied his clemency request, and he was executed the next day.

## C. *This Lawsuit*

About a month after Pye's execution, Pace, Heidler, and King sued the state in federal court, alleging that their exclusion from the state's agreement with the capital-defense bar would impair their clemency proceedings.   "Clemency proceedings," they explained, require a prisoner's attorneys to "perform a thorough, contemporaneous investigation" into their client's "background," "legal case," and "current character . . . [and] condition."   The investigation necessitates "substantial" meetings with the client and witnesses and "exhaustive" records collection, which "must be completed close in time to the clemency hearing."   And although some clemency work can be done months in advance, a meaningful amount of it happens during the "frantic time period immediately leading up to execution proceedings."

But Pace, Heidler, and King allege that pandemic-era restrictions that persist to this day have made clemency preparation "more difficult"—sometimes "impossible."   "Legal visitation to death row prisoners," for example, "remains severely restricted"

compared to "normal" conditions.    Additionally, "because federal habeas proceedings continued" during the pandemic even as executions were halted, clemency attorneys have a "'backlog' of warrant-eligible clients" that prevents them from "accurately" prioritizing their investigations.

By excluding them from the agreement, contended Pace, Heidler, and King, the state unlawfully created two unequal classes of clemency applicants.    The prisoners covered by the agreement will "receiv[e] representation for clemency proceedings . . . that is unimpaired by . . . [pandemic-era] restrictions."    Their attorneys will avoid the "severe[] restrict[ions]" on visitation and the difficult task of triaging cases.    But the prisoners not covered by the agreement—including Pace, Heidler, and King—won't avoid those impairments to their clemency proceedings.

As a result, Pace, Heidler, and King brought two claims under 42 U.S.C. section 1983:    one for disparate treatment in violation of the Equal Protection Clause, and one for arbitrary treatment in violation of the Due Process Clause.    They sought to enjoin the state from seeking execution warrants against them until the three conditions in the agreement were fulfilled, and to compel the state to abide by the agreement's notice requirements.

The district court dismissed for lack of standing.    *Pace v. Oliver*, 749 F. Supp. 3d 1304, 1312–18 (N.D. Ga. 2024).    The state moved to dismiss for failure to state a claim, and, at a hearing on the motion, the court raised a standing issue on its own.    At the hearing, the state "conceded the existence of standing," agreeing

that "because [Pace, Heidler, and King] 'are death eligible' and '[execution] could occur in the future, then they would have standing for an upcoming execution warrant.'"  *Id.* at 1313.  But Pace, Heidler, and King lacked standing, the district court explained, because Georgia district attorneys retained "sole authority" to pursue—or not pursue—execution warrants.  *Id.* at 1315.  Although the district attorneys might seek an execution warrant "immediately" once prompted by the state, "it [wa]s also possible that [they] might *never* [do so]."  *Id.* at 1315–16 (citing *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1233 (11th Cir. 2019)).  Therefore, the district court concluded, any injury to Pace, Heidler, and King wasn't imminent.  *Id.* at 1315–17.  That Pye had been executed "d[id] not itself overcome th[e] [imminence] issue" because it was, at most, a past injury.  *Id.* at 1316 (first citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); and then citing *31 Foster Child. v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003)).

Pace, Heidler, and King appeal the dismissal.

## II.  STANDARD OF REVIEW

"We review standing determinations *de novo*."  *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1312 (11th Cir. 2020).  The plaintiff bears the burden of "support[ing] 'each element' of standing with 'the manner and degree of evidence required at [each] successive stage[] of the litigation.'"  *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1241 (11th Cir. 2022) (en banc) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  "[A]t the motion to dismiss stage, a plaintiff must allege facts that, taken

24-13973　　　　　　　　Opinion of the Court　　　　　　　　　　9

as true, 'plausibly' state that the elements of standing are met."
*Id.* (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020)).
"[I]n assessing standing, the court . . . must [] assume that on the
merits the plaintiffs would be successful in their claims." *Romano
v. John Hancock Life Ins. Co. (USA)*, 120 F.4th 729, 737 (11th Cir. 2024)
(citation modified).

### III.  DISCUSSION

Pace raises two issues on appeal.[3]　First, he contends that
the district court improperly considered a factual challenge to its
subject-matter jurisdiction without giving him notice or an oppor-
tunity to present evidence at a hearing.　Second, he asserts that
the district court wrongly concluded that he didn't plead an immi-
nent injury and so didn't have standing to sue.

### A.  *The district court took the allegations on their face in ruling on standing.*

Pace contends that the district court looked beyond his com-
plaint in ruling on standing without giving him notice or an oppor-
tunity to present evidence.　He focuses on what he says is the dis-
trict court's "flawed and incomplete description of Georgia's exe-
cution scheme," and, specifically, its "characterization [of] [Geor-
gia's] district attorney[s] as the central actor[s]" in the execution
process.　That characterization, he says, came solely from "factual

---

[3] For brevity, from here on out, when we refer to Pace, we also mean Heidler
and King.

10                    Opinion of the Court                    24-13973

assertions made by counsel for [the state] during the . . . motions hearing." Not so.

A district court may dismiss an action for lack of subject-matter jurisdiction based on either a "facial" or "factual" defect in the complaint. *See Efron v. Candelario*, 110 F.4th 1229, 1234 n.5 (11th Cir. 2024) (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). A complaint is facially insufficient if, even accepting the allegations as true, it still fails to "allege[] a basis of subject matter jurisdiction." *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation modified). A complaint is factually insufficient if "matters outside the pleadings, such as testimony and affidavits," show that subject-matter jurisdiction doesn't exist "in fact." *See id.* (citation modified). District courts may not, on their own, dismiss for lack of subject-matter jurisdiction on factual grounds without giving the plaintiff "an opportunity to provide evidence." *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 271 (2015). And where there are "disputed factual questions," a district court may not dismiss without holding an evidentiary hearing. *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 879, 882 (11th Cir. 2000).

If the district court had dismissed for lack of subject-matter jurisdiction based on "matters outside the pleadings" without giving Pace a chance to respond, it probably would have erred. But the district court looked no further than Pace's complaint, which included the text of the state's agreement with the capital-defense bar. The agreement was "made with the understanding

that . . . [d]istrict [a]ttorney[s] maintain[] the *sole authority* to obtain an execution warrant."    The district court was allowed to treat the agreement as part of Pace's complaint and accept the "sole authority" representation as true.    *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (holding that, if a "document's contents are alleged in a complaint and no party questions those contents, we may consider such a document" provided it's also central to the plaintiff's claim).    To the extent the court relied on what was said at the hearing, it was only to confirm that "sole authority" meant what it said.    *See, e.g.*, *Pace*, 749 F. Supp. 3d at 1315 ("Defendants stated, and Plaintiffs did not contest, that 'it's up to the [d]istrict [a]ttorney whether or not [] they get an execution warrant against a death eligible inmate[.]'"); *cf. Fed. Def. Program, Inc.*, 882 S.E.2d at 288 ("As the trial court correctly stated, the interlocutory injunction does not prevent a district attorney from acting alone to obtain an execution order.").

Pace responds that the district court's understanding of the role of district attorneys was "neither uncontested nor supported by the record."    But nowhere in his complaint did he second-guess or undermine the plain terms of the agreement he incorporated.    Nor did he try to do so in his opposition to the state's motion to dismiss.    And although Pace now complains that district attorneys in fact play a "limited" role in Georgia's execution-warrant process, he didn't plead that in his complaint.    Pace wasn't entitled to an opportunity to present evidence contesting his own uncontradicted allegations.

It wasn't error for the district court to listen to and discuss the parties' arguments about the pleadings.    That was why it held a hearing in the first place.    Because the district court didn't look beyond the pleadings, it didn't need to give Pace an opportunity to present evidence at a hearing.

### B.  *The district court improperly dismissed for lack of standing.*

But the district court did err in dismissing the complaint for lack of standing.    As we'll explain below, Pace has standing to bring his claims.

Federal courts may exercise jurisdiction only over "Cases" and "Controversies."    U.S. CONST. Art. III, § 2.    "To satisfy the case-or-controversy requirement, a plaintiff must have standing to sue."    *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083 (11th Cir. 2019).    A plaintiff has standing when he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."    *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).    An injury-in-fact is "an invasion of a judicially cognizable interest which is concrete, particularized, and actual or imminent."    *Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n*, 127 F.4th 1294, 1302 (11th Cir. 2025) (citing *Corbett*, 930 F.3d at 1232).

### 1.  Injury-in-Fact

We'll start with the injury-in-fact requirement.    Pace adequately alleged a concrete, particularized, and imminent future injury.

### a.  Concrete and Particularized

"[C]onstitutional harms" are "traditional" concrete injuries that "give[] rise to Article III standing."    *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 890 nn.7 & 9 (11th Cir. 2023).    To show an "'injury in fact' in an equal protection case" like this one, Pace must plead "the denial of equal treatment resulting from the imposition of [a government] barrier[.]"    *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). That injury is particularized if it "affect[s] [him] in a personal and individual way."    *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 923 (11th Cir. 2023) (quoting *Spokeo, Inc.*, 578 U.S. at 339).

Pace concretely and particularly alleged that the state is denying him the same treatment as the prisoners covered by the agreement.    For the covered prisoners, the state will wait six months after the three conditions are satisfied before seeking an execution warrant, it'll "seek the maximum warrant period of 20 days," and, after obtaining a warrant, "wait no less than 30 days" to pursue another one.    Because the state agreed to wait until the three conditions are satisfied, the covered prisoners face no impediment to the "substantial" meetings and assessments required for clemency representation.    And because the state agreed to a time-table on which it'd seek each execution warrant, the attorneys for

the covered prisoners know how long they'll have to prepare for each clemency proceeding.

But since he isn't covered by the agreement, Pace alleged, his clemency proceeding will be impaired in ways the covered prisoners needn't fear.    As Pace alleged, preparing for clemency requires "substantial" meetings, but "severe[]" pandemic-era restrictions make visitation difficult or impossible.    Without "face-to-face meetings," Pace's attorneys can't effectively assess his current character and condition.    Nor will Pace be able to meet with witnesses who might testify on his behalf.    Unlike Pace, the covered prisoners won't have to prepare for clemency with the same impairments; by the time the state seeks to execute any of them, visitation will be back to normal.

And as Pace alleged, a "thorough" and "contemporaneous" investigation "is essential to presenting the best possible case for clemency."    But because the notice provisions in the agreement do not apply to him, he will not have the same ability to plan his clemency investigation as the covered prisoners will have.

The unequal treatment between death-row prisoners who are covered by the agreement and those who aren't is a sufficiently concrete equal-protection injury to satisfy the requirements of Article III standing.    *See City of Jacksonville*, 508 U.S. at 666.    And because Pace's preparation for his clemency proceeding will be impaired relative to the covered prisoners, the state's unequal treatment directly "affect[s] [him] in a personal and individual way." *Garcia-Bengochea*, 57 F.4th at 923.

None of this is to say that Pace will ultimately prevail on the merits of his claims. *See Humphreys v. Comm'r, Ga. Dep't of Corr.*, 161 F.4th 1300, 1307–12 (11th Cir. 2025) (holding that claims identical to Pace's were unlikely to succeed on the merits). But assuming that he will succeed on the merits, as we must when we evaluate standing questions, *Romano*, 120 F.4th at 738, he pleaded a concrete and particularized injury.

Neither the state nor the district court disputes that Pace pleaded a concrete and particularized injury. They focused instead on imminence.

### b. Imminence

Imminence "is an 'elastic concept.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1340 (11th Cir. 2013) (quoting *Lujan*, 504 U.S. at 564 n.2). A plaintiff may show imminent injury from a state statute or policy if there's a credible, non-speculative threat that the statute or policy will be applied to him. *See Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1257–58 (11th Cir. 2012). Whether the "threat" is sufficiently "credible" is "quite [a] forgiving" standard. *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1305 (11th Cir. 2017) (en banc) (citation modified). A threat is credible where there's a "substantial risk" that the plaintiff will suffer injury, *Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 887 (11th Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)), or where there's a "realistic danger" of harm, *Daniels*, 127 F.4th at 1302.

The district court was wrong to conclude that Pace's injury wasn't imminent because the district attorney might "*never*" decide to seek a warrant to execute Pace. *Pace*, 749 F. Supp. 3d at 1315–16. Pace faces a "realistic danger" of suffering an unequal impairment in the near future because there's a "substantial risk" his clemency proceeding will take place when the state imminently seeks an execution warrant.

First, we may infer that there's a substantial risk because the state has been "vigorously defend[ing]" its right to execute Pace. *See Shen v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, 158 F.4th 1227, 1242 (11th Cir. 2025) (quoting *Dream Defs.*, 57 F.4th at 887) (inferring that "a credible threat of prosecution exist[ed]" where "state officials [] vigorously defended" a statute under which the plaintiffs feared prosecution). Second, the state "conceded the existence of standing" before the district court. *Pace*, 749 F. Supp. 3d at 1313. Of course, a party's concession can't create standing. *See Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983). But the state had an opportunity to clarify that it wouldn't seek to execute Pace before the conditions were satisfied—that Pace was in no danger of an impaired clemency proceeding. That it didn't shows a "realistic danger" Pace's clemency proceeding will take place soon. *Cf., e.g.*, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (holding that Article III didn't bar pre-enforcement review of a criminal statute partly because "[t]he Government [did] not argue[] . . . that plaintiffs will not be prosecuted" under that statute); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) ("Appellants maintain that the [challenged] provision

has not yet been applied and may never be applied . . . [but] ha[ve] not disavowed any intention of invoking the [] provision against [the appellees].").

Finally, there's a realistic danger the state will imminently move forward with Pace's execution and trigger his impaired clemency proceeding because the state actually sought to execute Pye, who at the time of the complaint was the only other death-row prisoner whose rehearing petition had been denied after the Georgia Supreme Court's emergency order expired. "Past wrongs [a]re evidence bearing on whether there is a real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 102 (citation modified). Where the "circumstances under which" some earlier injury occurred "have not changed in any way that would invalidate the repeated" occurrence of that injury, the earlier injury is evidence that future injury is "more than remotely possible." *Daniels*, 127 F.4th at 1303 (citation modified).

As Pace alleged, he and Pye were the only death-row prisoners in Georgia whose rehearing petitions were denied after the emergency order expired—and then the state executed Pye. The state's treatment of Pye is "evidence bearing on" how it'll treat Pace. *See Lyons*, 461 U.S. at 102. And neither the district court nor the state has pointed to any circumstances that would "invalidate" the probability that the state will trigger Pace's clemency proceeding by seeking to execute him as it did Pye. *See Daniels*, 127 F.4th at 1303. Pace thus faces a "substantial risk" that the state will seek to execute him, forcing him to undertake his clemency

bid at a disadvantage compared to the covered prisoners. That injury isn't too remote or speculative to satisfy Article III.

Picking up where the district court left off, the state urges that Pace's injury can't be imminent because the state can't force a district attorney to seek a warrant in the near future. But the state both understates its role in the execution process and overstates what imminence requires. To be sure, a district attorney could—in theory—decline to obtain a warrant sought by the state. In reality, however, the state controls when the execution process begins. "[E]xecutions do not happen in Georgia unless and until the [state] agrees to pursue them." *See* Preliminary Injunction Order at 17, *Fed. Def. Program, Inc. v. State*, No. 2022CV364429 (Ga. Super. Ct. May 17, 2022), *aff'd*, 882 S.E.2d 257 (Ga. 2022). As the state conceded at oral argument, it wasn't aware of a single occasion on which a district attorney refused the state's request to seek an execution warrant.

Given the state's extensive control over the start of the execution process, the mere possibility that a district attorney will refuse to do as the state bids doesn't negate the "realistic danger" Pace faces. Imminence does not require certainty. *E.g.*, *Houston*, 733 F.3d at 1340 (holding that an ADA tester plaintiff's injury, though not guaranteed, was sufficiently imminent where he "frequently" visited the area of a non-compliant store); *Harrell v. The Florida Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010) (holding that, although the plaintiff had "failed to identify a date on which he proposed to run his [banned] advertisements," his "intense

professional dependence on advertising ma[de] it *very likely* that he [would] attempt to run [those] advertisements" (emphasis added)). Here, the risk that Pace will face an impaired clemency proceeding is substantial.    Under the law, that's imminent enough.

### 2.   Traceability and Redressability

As to the remaining standing elements, Pace's imminent injury is traceable to the state and redressable through an injunction. "[T]raceability is not an exacting standard."    *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023).    All a plaintiff must demonstrate is a causal link between his injuries and the defendant's challenged conduct.    *See id*.    Redressability requires only that a favorable decision would "likely" remedy the plaintiff's injury.    *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022) (quoting *Lujan*, 504 U.S. at 561).

Here, the state, per its agreement, won't move forward with the covered prisoners' executions until the conditions are satisfied, so their clemency proceedings will occur in normal circumstances. But there's a substantial risk that it'll move forward with Pace's execution, so his clemency proceeding will take place in impaired circumstances.    That unequal treatment is traceable to the state. *See* Preliminary Injunction Order at 17, *Fed. Def. Program, Inc.*, No. 2022CV364429 ("[E]xecutions do not happen in Georgia unless and until the [state] agrees to pursue them.").    And enjoining the state from seeking to execute Pace until the conditions in the agreement are satisfied—which is the remedy Pace requested—will

block the state from treating Pace worse than the covered prisoners.    *See Booker*, 22 F.4th at 957.

★      ★      ★

Because Pace, Heidler, and King pleaded an injury-in-fact that is traceable to the state and redressable by the injunction they seek, the district court shouldn't have dismissed their suit for lack of standing.

## IV.  CONCLUSION

We **REVERSE** the district court's order dismissing this case for lack of standing and **REMAND** for further proceedings.

**REVERSED AND REMANDED.**